```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL S. GORECKE,
                                        DECISION AND ORDER
               Plaintiff,               No. 11-CV-6591(MAT)

       -vs-

UNITED PARCEL SERVICE, INC.,

               Defendant.
_____
```

**INTRODUCTION**

Plaintiff Daniel Gorecke ("Gorecke" or "Plaintiff"), represented by counsel, brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL") (N.Y. Exec. Law § 209, et seq.) alleging reverse discrimination leading to his termination by his former employer, United Parcel Service, Inc. ("UPS").

Defendant now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), seeking dismissal of Plaintiff's complaint in its entirety. Plaintiff opposes the motion. For the reasons set forth below, Defendant's motion is granted and Plaintiff's complaint is dismissed with prejudice.

**BACKGROUND**

The following facts are taken from the entire record, including the parties' submissions pursuant to Local Rule 56(a), and the Court's review of the entire record. Dkt. Nos. 24, 27, 29, 30.

**Plaintiff's Employment History at UPS**

Defendant UPS hired Plaintiff in November 1996 as a part-time Loader/Unloader. In March 2005, Plaintiff became a full-time Package Driver at the Henrietta, New York UPS facility ("the Henrietta facility") and remained employed in that position until his discharge on January 23, 2011. From 1998 through 2005, Plaintiff was disciplined on several occasions by UPS for a number of verbal and physical altercations with other UPS employees. For example, in June 1998, Plaintiff was involved in a verbal confrontation with his then-supervisor, Mike Johnson ("Johnson"), which resulted in Johnson submitting a report to his supervisor summarizing the incident. In January 2000, Plaintiff was "written up" and disciplined by then-supervisor, Doug Wagenhauser ("Wagenhauser"), after Plaintiff was involved in a verbal confrontation with a co-worker. In April 2005, Plaintiff was issued a warning after it was determined that he had harassed co-worker Falon Richards ("Richards"). UPS Management also met with Plaintiff to remind him of the company's Professional Conduct and Anti-Harassment and Workplace Violence Prevention Policies, and

explained that future action of that nature would result in discipline, up to and including discharge.

**UPS's Relevant Policies, Training, and Complaint Mechanisms**

UPS maintains a Code of Business Conduct ("CBC") and a Professional Conduct and Anti-Harassment Policy, both of which prohibit unfair treatment on the basis of race. Plaintiff admits that he was aware of and understood the CBC, including its non-discrimination policy. Additionally, UPS maintains policies that prohibit workplace violence, which include the Crisis Management and Workplace Violence Prevention Policy ("CM & WVPP"), and a stand-alone Workplace Violence Prevention Policy ("WVPP"). Both the CM & WVPP and the stand-alone WVPP are distributed to employees, and explain that "UPS had adopted a zero tolerance workplace violence policy." The CM & WVPP and stand-alone WVPP specifically prohibit "assaults, fighting, threatening comments, intimidation, and . . . destruction of . . . property" and instruct employees to report prohibited comments or behavior either directly to supervisors or by use of a "Help Line" established by UPS. UPS's anti-violence policies do not contain an exception for self-defense.

Plaintiff testified that he was aware of the zero tolerance policy covering workplace violence, and that as a UPS employee, he had an obligation to report threats of violence to his superior, the Human Resources manager, or by calling the Help Line.

Moreover, employees who are Union members can use the grievance procedure outlined in the Upstate/West New York Supplement to the NMA to raise a work-related concerns or complaints through the Union representative.

**The Events Leading up to Plaintiff's Termination**

UPS preloaders Nick Fedele ("Fedele"), Josh Everett ("Everett"), Matt Asip ("Asip"), Tom Coccolova ("Coccolova"), and Brett Godshall ("Godshall"), all of whom are white males, worked at the Henrietta facility at all times relevant to the complaint. Beginning in 2007, and continuing through Plaintiff's termination, these co-employees allegedly made disparaging comments to Plaintiff regarding Plaintiff's favorite football team, the San Francisco 49ers and also allegedly bullied Plaintiff. According to Plaintiff, on January 11, 2011, Asip shoved Plaintiff and threatened to "kick his ass." On January 21, 2011, Asip reported to Preload Manager Michael Greene ("Greene") that he had just been strangled by Plaintiff in response to a comment he made about the San Francisco 49ers. Asip told Greene that he did not physically provoke Plaintiff. Greene immediately investigated the matter by questioning Asip, Plaintiff and Will Stein ("Stein"), an employee who had witnessed and broke up the altercation, and who also informed the Union Steward of the incident. All of the individuals involved in the investigation are white. When Plaintiff met with Greene and the Union Steward to discuss the incident, Plaintiff

admitted to putting his hands on Asip.  Based on his investigation of the incident Green concluded that Plaintiff had violated UPS's Workplace Violence Prevention Policy, and terminated Plaintiff's employment.

Plaintiff's Union grieved his discharge before the Upstate/West New York Discharge/Suspension Panel ("the Panel"). The Panel consists of three UPS members, three Union members, and a neutral arbitrator.  The neutral arbitrator is a third-party, not employed by UPS.  Plaintiff, who was represented by the Union at his hearing before the Panel, signed a document acknowledging that he had sufficient opportunity to present all the facts and evidence at the Panel hearing and that his Union properly represented him at the hearing.  Following the completion of the hearing, Plaintiff's termination was upheld.

**Other UPS Employees also Terminated for Physical Violence at Work**

Both before and after Plaintiff's termination, various UPS employees were also terminated for engaging in physical violence. UPS Package Drivers Troy Chapman ("Chapman") and David Johnson, both of whom are African-American, were terminated from the Henrietta facility in 2008 for violating the WVPP.  Chapman and David Johnson's Union grieved the respective discharges and the grievances went to arbitration before the Panel.  As a result of the arbitration, Chapman and David Johnson were both reinstated by the Panel.  David Johnson was again terminated by UPS in 2010 for

violating the Workplace Violence Prevention Policy, and again grieved his discharge. This time, however, the Panel upheld David Johnson's discharge. Another employee, Jennifer Privitera ("Privitera"), a white female Package Driver in the Henrietta facility, was also terminated in February 2011 for violating the Professional Conduct and Anti-Harassment Policy. Her discharge was reduced to a time-served suspension.

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment

Pursuant to Rule 56, a court shall grant a motion for summary judgment if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). A plaintiff can defeat a motion for summary judgment by "com[ing] forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is

a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372 (2007).

## II. Plaintiff has not Established a Prima Facie Case of Discrimination under Title VII, the NYSHRL, and/or Section 1981

Claims of employment discrimination brought under Title VII are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142-43 (2000). Plaintiff's claims under Title VII, the NYSHRL and Section 1981 are all analyzed under the same burden-shifting standards. See Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006); Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 44 (2d Cir. 1984).

To establish a prima facie case of employment discrimination, a plaintiff must show (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997). If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the employer, who must offer a legitimate, non-discriminatory reason for the employment action. Id. (citation omitted). Specifically, the employer "'must clearly set forth, through the introduction of

admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 255 n.8 (1981)).

"If the employer successfully articulates such a reason, the plaintiff has the burden of proving that the proffered reason is merely a pretext for discrimination." Id. (citation omitted); see also Burdine, 450 U.S. at 252-53. "Once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (citing, *inter alia*, St. Mary's, 509 U.S. at 510-11). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999).

In this case, the parties do not dispute for purposes of this motion, that Gorecke was qualified for his position and that he suffered an adverse employment action when he was terminated, but disagree as to whether he is a member of a protected class, and whether his termination occurred under circumstances giving rise to

an inference of discrimination.  Dkt. Nos. 24-1 at 12-14, 29 at 7-11, 30 at 2.

### A.   Membership in a Protected Class

In the instant case, Plaintiff is a white employee who claims that he was subjected to "reverse-discrimination" by his employer UPS.  Courts have struggled in attempting to apply the McDonnell Douglas burden-shifting framework to Title VII suits by white plaintiffs, and no universally accepted statement of the appropriate standard has been established.  The confusion arises from the wording of the first prong of the prima facie test because a white plaintiff cannot establish membership in a "protected class" in the same way a plaintiff belonging to a minority group that has been historically discriminated against can.  In an effort to analyze reverse discrimination cases under the established prima facie case standards, some courts require white plaintiffs to establish "background circumstances" supporting the suspicion that the defendant is that unusual employer who discriminates against the majority, see, e.g., Parker v. Baltimore & O.R.R. Co., 209 U.S. App. D.C. 215, 652 F.2d 1012, 1017 (D.C. Cir. 1981), instead of proving membership in a historically protected class as required to state a prima facie case.  Other courts, however, have concluded that substituting "background circumstances" for the first prong of stating a prima facie case does, in fact, impermissibly raise the bar for pleading a cause of action, and have rejected the Parker

analysis for that reason. See Ulrich v. Exxon Co., 824 F. Supp. 677, 683-4 (S.D. Tex. 1993) (describing the "background circumstances" test as imposing a "heightened burden" and citing cases that have criticized it); see also Cully v. Milliman & Robertson, Inc., 20 F. Supp. 2d 636, 641 (S.D.N.Y. 1998) (describing Parker as requiring a "higher prima facie burden for reverse discrimination plaintiffs.").

The Second Circuit has not taken a position on this issue, and the district courts in this Circuit have split on it. Cf., e.g., Olenick v. New York Telephone, 881 F. Supp. 113, 114 (S.D.N.Y. 1995) (adopting "background circumstances" test); Umansky v. Masterpiece Int'l Ltd., 1998 U.S. Dist. LEXIS 11775, 1998 WL 433779 (S.D.N.Y. 1998) (following Olenick); Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp. 2d 125 (D. Conn. 1998) (rejecting Olenick); Ticali v. Roman Catholic Diocese of Brooklyn, 41 F. Supp. 2d 249, 260-262 (E.D.N.Y. 1999) (rejecting "background circumstances" test, and instead assessing whether or not an inference can be drawn from the established facts that the employer treated a Caucasian plaintiff less favorably because of his race); see also Seils v. Rochester City Sch. Dist., 192 F. Supp.2d 100 (W.D.N.Y. 2002)) (finding "background circumstances" analysis persuasive, but declining to address issue since plaintiffs unable to establish fourth prong of prima facie inquiry).

In this case, however, the Court need not decide whether Plaintiff has met the first prong of the prima facie inquiry, because regardless of the standard applied, Plaintiff has failed to establish that his termination occurred under circumstances giving rise to an inference of discrimination, and therefore, has failed to state a claim of discrimination.

**B.   Inference of Discrimination**

A plaintiff establishes an inference of discrimination by demonstrating that similarly situated persons who do not belong to the plaintiff's protected class, were treated more favorably than the plaintiff in the workplace. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001). In this case, Plaintiff attempts to support his argument that he was treated less favorably than similarly situated non-white employees demonstrating that two similarly situated African-American employees, David Johnson and Chapman, were treated more favorably than he was despite engaging in equivalent behavior. Specifically, Gorecke claims that although he was fired for engaging in workplace violence, David Johnson and Chapman, remained employed by UPS despite themselves engaging in physical altercations in the workplace.

Plaintiff, however, he has failed to introduce any admissible evidence to support this contention. For example, although he claims that the evidence reveals that Chapman and David Johnson were treated differently, the undisputed evidence in the record

shows that David Johnson and Chapman were, in fact, terminated for violating UPS's WVPP; that David Johnson and Chapman grieved their respective discharges, and that the arbitration Panel, not UPS, reinstated both employees. See Dkt. No. 9 at 2-3, 9; Carr Decl. at Ex. E; Greene Dep. at 39, 41, 42, 44. Moreover, David Johnson was ultimately fired in 2010 for engaging in workplace violence, and upon his second termination, the Panel upheld the termination decision. In short, UPS's conduct with respect to Plaintiff, David Johnson, and Chapman was entirely consistent with Plaintiff's treatment: regardless of their race, after each employee engaged in physical violence in the workplace, each employee was fired for having engaged in workplace violence. That an independent grievance board, on two out of three occasions, reinstated African-American employees does not alter the fact the UPS similarly disciplined all employees who engaged in workplace violence. To wit, the evidence in the record demonstrates that whether an employee was black or white, if that employee engaged in workplace violence, the employee was fired.

Because plaintiff has failed to establish that he was treated less favorably by UPS than similarly situated minority employees, plaintiff has failed to establish that he was fired under circumstances giving rise to an inference of discrimination.

**III. Defendant Has Offered a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment**

Even if Plaintiff could present evidence supporting a prima facie case of reverse race-based discrimination, UPS has proffered a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Specifically, UPS has asserted that Plaintiff was discharged because he violated the company's policies prohibiting workplace violence. Dkt. No. 24-1 at 14. Such an explanation states a legitimate, non discriminatory reason for terminating plaintiff's employment. See Dorcely v. Wyandanch Union Free School Dist., 665 F.Supp.2d 178, 199 (E.D.N.Y. 2009) (failure to follow employer's procedures and policies and inappropriate work place behavior constitute legitimate nondiscriminatory reasons for terminating employment).

**IV. Plaintiff has Failed to Rebut Defendant's Legitimate, Non-Discriminatory Reason**

Plaintiff disputes the validity of Defendant's proffered reason for his termination by asserting that UPS treated similarly situated African-American employees more favorably than white employees. As stated above, however, I find that plaintiff has failed to present any admissible evidence establishing this claim. Rather, the evidence in the record shows that UPS engaged in uniform application of its WVPP to all its employees by discharging similarly-situated African-American employees when they also

engaged in physical violence in the workplace.  Plaintiff has not come forward with any evidence that undermines UPS's legitimate business reason for his termination.  Indeed, Plaintiff has come forward with nothing more than unsupported, conclusory allegations of race-related reverse discrimination and therefore has failed to establish a genuine issue of material fact to preclude granting of a motion for summary judgment on his claim of reverse discrimination.  Anderson, 477 U.S. at 249.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted.  Plaintiff's Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

             S/Michael A. Telesca

             _____
             HONORABLE MICHAEL A. TELESCA
             United States District Judge

DATED: April 1, 2014
     Rochester, New York